## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

-------------------------------------------------------x

ANDREW WALZER                                    :
                                                 :
     Plaintiff,                                 :
                                                 :    Civ. No. 04-5672 (DRD)
          v.                          :
                                                 :
MURIEL SIEBERT & CO., INC.,                      :     <u>OPINION</u>
NATIONAL FINANCIAL SERVICES LLC,                 :
GERARD KOSKE, RONALD BONO, &                     :
MURIEL SIEBERT                                   :
                                                 :
     Defendants                                 :
                                                 :

-------------------------------------------------------x

Andrew Walzer
771 Bradley Parkway
Blauvelt, New York 10913

28 E. Sheffield Ave., D5
Englewood, New Jersey 07631

     *Pro Se* Plaintiff

Morrill J. Cole, Esq.
COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Court Plaza North
25 main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800

     Attorneys for Defendants Muriel Siebert & Co., Inc., Gerard Koske, Ronald Bono, and
Muriel Siebert

Rebecca Tapie, Esq.
Alyson Weckstein Tiegel, Esq.
BROWN, RAYSMAN, MILLSTEIN, FELDER & STEINER, LLP
163 Madison Avenue
P.O. Box 1989

1

Morristown, New Jersey 07062-1989

900 Third Avenue
New York, New York 10022

    Attorneys for Defendant National Financial Services, LLC


**DEBEVOISE, Senior District Judge**

    This matter is before the court on Defendants', Siebert & Co. ("Siebert"), Gerard Koske,

Ronald Bono, Muriel Siebert ("Ms. Siebert") and National Financial Services LLC ("NFS"),

motion to dismiss Plaintiff's, Andrew Walzer ("Plaintiff"), Complaint or in the alternative to stay

the action or in the alternative to transfer it to the Southern District of New York.  Siebert is a

stock brokerage firm.  NFS is a clearing broker for smaller stock brokerage firms, including

Siebert.  Koske is a compliance manager at Siebert; Bono is Vice President of operations at

Siebert; and Ms. Siebert is chair and majority owner of Siebert.

    Plaintiff filed this lawsuit against Defendants alleging the issuance of improper margin

calls resulting in the sale of securities in his Siebert account.  Specifically, Plaintiff alleges that

having traded on margin for twenty years, he was not subject to the margin requirements of

Siebert or NFS, because he did not sign a margin agreement.  Defendants' motion is based in part

on their contention that the claims contained in Plaintiff's Complaint are barred by, *inter alia*, the

doctrine of *res judicata and* collateral estoppel.  For the reasons set forth herein, Defendants'

motion to dismiss will be granted and the Complaint dismissed with prejudice.


I. Background

Plaintiff, having opened a personal brokerage account with Siebert in 1980, was a client with Siebert for approximately 20 years. His investing activities over the years involved both cash and margin accounts. In 1982, Plaintiff signed an options agreement for his personal brokerage account and it was at that time that he was informed that he would be given margin privileges per the options agreement. Plaintiff contends that in mid-2002, Siebert arbitrarily changed the rules it previously followed governing his margin account. The basis of the change, he claims, was an agreement Siebert claimed he made, but an agreement that Siebert refused to show him.[1] The alleged change raised Plaintiff's margin-maintenance requirements and permitted discretionary margin calls. At some point, Plaintiff's account became unstable and as a result, he received numerous margin-call letters and phone calls from Siebert requesting that additional cash be deposited in his account in order to avoid sell-out.[2] Many of Plaintiff's securities and stocks were sold by issuing the margin calls and the sales resulted in significant losses.

Siebert relied on Plaintiff's 1992 Margin Account Application. Directly above Plaintiff's signature the agreement states in capital letters:

> I REPRESENT THAT I HAVE READ THE TERMS AND CONDITIONS (ON THE REVERSE SIDE OF THIS DOCUMENT) AS CURRENTLY IN EFFECT AND AGREE TO BE BOUND BY SUCH TERMS AND CONDITIONS AS CURRENTLY IN EFFECT AND AS MAY BE AMENDED FROM TIME TO TIME. THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION CLAUSE WHICH IS ENCLOSED. I ACKNOWLEDGE

---

[1] A 1996 signed agreement was eventually presented to Plaintiff in or about November 2002. However, Plaintiff alleges that this agreement was forged.

[2] Plaintiff claims he was not subject to the margin requirements of Siebert or NFS, despite having traded on margin through them, because he did not sign a margin agreement with them, and that therefore he was subject only to the minimum margin account maintenance required by the rules of the New York Stock Exchange.

RECEIPT OF THE PREARBITRATION CLAUSE.

On or about December 4, 2003, Plaintiff filed an action against Siebert in the New York

State Supreme Court alleging, *inter alia*, the improper sale of his securities and the mailing by

Siebert of a fraudulent, forged account and margin agreement.  The complaint in the New York

action listed the securities that Plaintiff complained were improperly sold on margin calls and

claimed they had a total value of $803,258.  The court held a hearing[3] to determine whether

Plaintiff and Siebert had agreed to arbitrate per the 1992 arbitration clause.  On December 21,

2004, the court rendered a decision holding that Plaintiff had agreed to arbitrate the issues

enumerated in the New York action.  The court's opinion read, in part, as follows:

> Plaintiff argues: 1) that because his prior agreements with the defendants
> did not contain pre-dispute arbitration clauses, he did not agree to arbitration; 2)
> that he did not read the margin agreement and therefore it is unenforceable; and
> 3) that his signature on a subsequent 1996 account is a forgery and this somehow
> taints the enforceability of the 1992 agreement to arbitrate.
>
> At the outset, it is important to note that Mr. Walzer holds a graduate
> degree in business from New York University and also operates his own
> manufacturing and importing company. (Walzer Trans. 53, 11. 8-17). He has had
> at least three additional accounts, one for his corporation and two for his children.
> Each of these accounts contain similar arbitration clauses.
>
> As a business major, plaintiff knew or should have known that his failure
> to read the agreement before signing it was not a defense to this action.  As a
> business major, Mr. Walzer knew or should have known that the 1992 Agreement
> superseded the 1980 and 1982 agreements.  And finally as a business major, Mr.
> Walzer knew or should have known that if the 1996 agreement was [sic], which
> contained an arbitration clause, was a forgery and voided, the 1992 agreement
> would be in full force and effect, which would of course compel arbitration.
>
> This court finds Mr. Walzer's testimony, and the positions he has taken in
> this litigation, incredible. The court is of the belief that Mr. Walzer was aware of
> and consented to arbitration.
>
> The court is aware that Mr. Walzer and indeed many investors are
> distrustful of the arbitration process in the securities industry.  However, the

---

[3] During the hearing, Plaintiff discharged his counsel and proceeded *pro se*.

Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements (Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (Flanagan v. Prudential-Bache Securities, 67 N.Y.2d 500 (1986). Similarly, "it is the strong public policy of this State to favor the resolution of disputes in arbitration as a means of conserving scarce judicial resources" (Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner, 243 AD2d 1, 9 [1st Dept. 1998]).

Accordingly, the cross-motion of the defendant to compel arbitration is granted and the complaint if dismissed.

The order implementing the decision provided, somewhat inconsistently with the ruling in the opinion that the complaint be dismissed:

ORDERED that defendant's motion to compel arbitration be, and the same hereby is, granted in all respects; and it is further

ORDERED that the above-captioned action be, and the same hereby is, stayed pending the conclusion of the arbitration between plaintiff and defendant of the claims set forth in plaintiff's Verified Complaint.

Plaintiff filed a notice of appeal of the court's order in or about February 2005, but to date has not proceeded with the appeal.

On November 17, 2004, Plaintiff filed his Complaint in this court against Siebert, NFS, and individuals, Koske, Bono and Ms. Siebert. In his Complaint, Plaintiff lists the same securities that are the subject of the New York action. Plaintiff, seeking restoration of his securities, again contends that there was no margin agreement under which his securities could be sold, that his signature was forged on the 1996 account application and that the 1996 document taints the enforceability of the 1992 agreement. With respect to the individual defendants, Plaintiff contends that the individuals were responsible for the following actions: 1) Bono mailed him the alleged forged agreement; 2) Koske denied the agreement was a forgery; and 3) Ms. Siebert refused to take any of Plaintiff's phone calls.

5

As stated above, in the New York action the court entered a judgment on the issue of arbitrability and ordered the action stayed pending arbitration.  Defendants argue that Plaintiff's claims in the instant matter are identical to those he asserted in the New York action, and therefore Plaintiff's Complaint should be dismissed with prejudice because 1) his claims are barred by the doctrine of *res judicata*, 2) he is collaterally estopped from asserting his claims against the individual defendants and NFS, and 3) the claims asserted are subject to arbitration.

## II. <u>Discussion</u>

### A. <u>Res Judicata</u>

Under the doctrine of *res judicata*, "a final judgment on the merits bans further claims by parties or their privies based on the same cause of action". *Brown v. Felsen,* 442 U.S. 127, 182 (1979).  The Court of Appeals for the Third Circuit has held that, application of the claim preclusive aspect of the *res judicata* doctrine requires a showing that: 1) an earlier judgment is final and on the merits; 2) the claims asserted by the plaintiff are the same as those asserted in the earlier action; and 3) the parties are the same as, or in privity with, the parties from the earlier action. *Huck v. Dawson*, 106 F.3d 45, 48 (3d Cir. 1997); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).  When a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. U.S.*, 463 U.S. 110, 129-130 (1983), citing *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876).  The final "judgment puts an end to the cause of action, which cannot

6

again be brought into litigation between the parties upon any ground whatever." *Nevada v. U.S.*, 463 U.S. at 130, citing *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948). Judicial economy is achieved when duplicative, successive litigation is avoided. *Pastewka v. Texaco*, Inc., 420 F.Supp. 641, 646 (D.Del. 1976).

Approximately six months ago on December 21, 2004, Justice Tolub in the New York State Supreme Court addressed Plaintiff's allegations that he was not subject to arbitration because the agreement containing a binding arbitration clause was invalid and that his signature on the agreement was forged by Siebert. *Andrew Walzer v. Muriel Siebert, Inc.*, Index No. 603825/2003 (December 21, 2004). As noted above, Justice Tolub ruled that Plaintiff agreed to arbitrate pursuant to an agreement that he made with Siebert. His judgment was final as to the dispositive arbitration issue.

In the case at bar, Plaintiff raises the same issue that he previously raised, namely that he is not subject to arbitration.[4] That issue has already been decided against him in the New York State Supreme Court. The doctrine of *res judicata* precludes Plaintiff from retrying that issue against Siebert in this case because under the doctrine, this court is barred from relitigating an issue previously adjudicated in another court.

Plaintiff contends that this court is not bound by the doctrine of *res jusdicata* and does not have to follow the ruling of the New York State Supreme Court; rather it must only adhere to rulings of the United States Supreme Court. Plaintiff bases his contention on the Supremacy

---

[4] Plaintiff's claim also contains many substantive issues, however the effect of the ruling herein is pertinent only to the arbitration clause and not to the merits or substantive issues of the case. They must all be decided in the arbitration proceeding.

Clause of the United States Constitution.  Plaintiff's contention is incorrect.  First, the court will not engage in an analysis of the application of the Supremacy Clause, because in this case, such an analysis would be useless and inapplicable.  Second, and more importantly, numerous federal courts in the Third Circuit and throughout the United States have held that the doctrine of *res judicata* prevents a party from bringing an action in federal court on issues previously determined by prior state court judgments. *See Dowdell v. Univ. of Medicine and Dentistry*, 94 F.Supp.2d 527 (D.N.J. 2000), *Churchhill v. Star Enters.*, 3 F.Supp.2d 625 (E.D.Pa. 1998), *Manes Org., Inc. v. Standard Dye and Finishing Co.*, 472 F.Supp. 687 (S.D.N.Y. 1979).  Federal courts give state court judgments the preclusive effect they would have under the law of the state in which the judgment was rendered. *See* 28 U.S.C. § 1738 (providing that state judicial proceedings shall have the same full faith and credit in every court within the United States as they have in the courts of the State from which they are taken); *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  An order by a state court that a claim must be submitted to arbitration is final and entitled to *res judicata* effect. *See Manes Org., Inc. v. Standard Dyeing and Finishing Co.*, 472 F.Supp.; *Laborers' Union of N. Am. v. Am. Postal Workers Union*, 1990 WL 130673 (D.C. 1990); *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983).

Plaintiff also argues that because he has appealed the order of the New York court that this court should stay its hand.  However, such an appeal doesn't affect the law governing *res judicata. Laborers' Int'l Union of N. Am., AFL-CIO v. Am. Postal Workers Union, AFL-CIO*, 1990 WL 130673.  In *Laborers' Union*, the court requested the parties to show cause why the court should not compel the parties to arbitration.  The court then examined the responses of the

8

parties (one of which argued that their filing of a petition for certiorari in the United States Supreme Court should require the court to stay its hand) and dismissed the case, stating, "the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court." *Id.* at *1.

The court will not stay the present matter. Because the New York court has already decided the issue of arbitrability, Siebert's motion to dismiss will be granted on *res judicata* grounds.

B. Collateral Estoppel

NFS and the individual defendants argue that Plaintiff is collaterally estopped from asserting his claims against them. Their contention is based on the fact that he asserts the same claims against the individuals and NFS, that he asserted against Siebert, that the New York court resolved those claims adversely to him and that, therefore, the claim preclusion rules of collateral estoppel apply.

The doctrine of collateral estoppel, or issue preclusion, "prevents re-litigation of a particular fact or legal issue that was litigated in an earlier action." *Seborowiski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999). The principle behind the doctrine is that "later courts should honor the first actual decision of a matter that has been actually litigated." *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1231 (3d Cir. 1995)(internal quotations omitted). Issue preclusion requires that: 1) the issue decided in the prior adjudication be identical to the one presented in the later action, 2) there be a final judgment on the merits, and 3) the party against whom the doctrine is asserted was a party or in privity with a party to the

prior adjudication and had a full and fair opportunity to litigate the issue in question in the prior action. *Seborowski v. Pittsburgh Press Co.*, 188 F.3d at 169.  The doctrine precludes the relitigation of an issue that has been determined adversely to the party against whom the estoppel is asserted, *Wheeler v. Nieves*, 762 F. Supp. 617, 625 (D.N.J. 1991), and it applies whether or not the tribunals are the same. *Weinstein Enters. v. Morini*, 629 N.Y.S.2d 478 (N.Y.A.D. 1995); *Keeler v. W. Mountain Corp.*, 482 N.Y.S.2d 92 (N.Y.A.D. 1984).

The individual and corporate defendants are in privity with Siebert and therefore the doctrine of collateral estoppel applies to Plaintiff's claims against them. Though the individual defendants have not signed a contract, they may compel arbitration or be subject to arbitration because they are agents or employees of Siebert (a party to the agreement). *Arnold v. Arnold Corp. - Printed Communications for Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990).  The claims against the individual defendants, as employers of Siebert, are arbitrable together with the claims based on the acts of Siebert, the principal, provided their acts fall within the scope of the agreement. *Farmers and Merchant's Bank v. Hamilton Hotel Partners* Ltd., 702 F.Supp. 1417, 1425 (W.D. Ark. 1988).

NFS joined in motion of the other defendants.  However, Plaintiff contends that the ruling in the New York action does not apply to NFS. (Walzer April 22, 2005 Reply at 2).  NFS submitted to the court the Margin Account Application and Agreement to which Plaintiff, Siebert and NFS were parties and are therefore bound. (NFS Tapie Cert.).  The first line of the Agreement states that the terms apply to Siebert and NFS. *Id.* The Agreement also fully discloses that the disputes are subject to arbitration. *Id.*  Because the New York court decided that the agreement with Siebert compelled arbitration, and NFS was also a party to that same agreement,

Plaintiff's claim against NFS with respect to arbitrability is also barred by the doctrine of collateral estoppel.

Because Plaintiff's complaint in this court against NFS and the individual defendants raises the same issue of arbitrability that was adjudicated in the New York action, NFS and the three individual defendants are entitled to dismissal of the complaint against them by virtue of the claim preclusion rules of collateral estoppel.

Plaintiff argues that based on the Supreme Court's holding in *Exxon Mobil v. Saudi Basic Industries*, 125 S.Ct. 1517 (2005), preclusion in the case at bar is not available. Plaintiff misinterprets the Supreme Court's holding and the applicability of that case to the instant matter. *Exxon* addresses issues of jurisdiction, not preclusion. In *Exxon*, the Supreme Court examined the *Rooker-Feldman* doctrine and held that that doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.* at 1521-1522.

The court notes that Plaintiff is highly critical of the ruling in the New York action, and he continues to argue that the case before Justice Tolub was not heard on the bulk of its merits. He contends that Justice Tolub incorrectly based his decision on a 1992 Margin Account Application and that he erroneously overlooked evidence (Walzer, April 28, 2005 at 4, 5; Walzer April 22, 2005 at 12). However, Plaintiff's challenge of the ruling in the New York action must

fail in this court.  If Plaintiff seeks to appeal the order issued by Justice Tolub, he must follow the appropriate procedures for such an appeal rather than challenge the rulings in this court.

## III. Conclusion

Claim and issue preclusion serve similar purposes.  Both prevent litigation of issues that should have been or were actually decided in a prior suit so as to promote judicial economy, predictability and freedom from harassment for litigants.  *Electro-Miniatures Corp. v. Wendon Co.*, 889 F.2d 41, 44 (3d Cir. 1989).  As discussed supra, both doctrines are applicable in the instant matter and bar Plaintiff's actions in this court.

For the reasons set forth herein, Defendants' motion will be granted, and the Complaint will be dismissed with prejudice. *See Dowdell v. Univ. of Medicine and Dentistry*, 94 F.Supp.2d.[5]

_____
/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 30, 2005

_____

[5] In recurring responses to Defendants' motions Plaintiff filed a battery of motions: I) a motion to withdraw as *pro se*, name an attorney to represent him and amend the complaint, ii) to adjourn the motion to dismiss, iii) for additional time to answer Defendants' motions, iv) for discovery and a pretrial conference, v) for sanctions against Defendants, and vi) for a default judgment against NFS.

Plaintiff is perfectly free at anytime to abandon his *pro se* status and retain an attorney, but he has failed to do so after many months of litigation.  It would be futile to amend the Complaint, because it has been decided by the New York court that all the issues he seeks to raise must be addressed in arbitration.  Plaintiff has had ample time to answer Defendants' motions and has availed himself of that time to pepper the court with opposition papers.  There is no basis for discovery and a pretrial conference in this proceeding.  Any discovery must be in the arbitration proceeding. There is no basis for sanctions against Defendants.  It is uncertain whether NFS is technically in default in light of the somewhat confused status of service upon it. If it is there is good cause for the default; it has a meritorious defense and the default should be vacated.  In a word all of Plaintiff's motions will be denied.