**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDREW WALZER, | |
| Plaintiff, | Civ. No. 04-5672 (DRD) |
| v. | **O P I N I O N** |
| MURIEL SIEBERT & CO., INC., ET AL., | |
| Defendants. | |

*Appearances by:*

ANDREW WALZER
771 Bradley Parkway
Blauvelt, NY 10913

   *Pro Se Plaintiff*

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, PA
by:  Morrill J. Cole, Esq. and Nicholas R. Weiskopf, Esq.
25 Main Street
P.O. Box 800
Hackensack, NJ 07602

   *Attorneys for Defendant Muriel Siebert & Co., Inc., Muriel Seibert, Gerard Koske, and*
   *Ronald Bono*

THOMPSON HINE, LLP
by:  Rebecca Brazzano, Esq. and Michael G. Shannon, Esq.
335 Madison Avenue
New York, NY 10017

   *Attorneys for Defendant National Financial Services, LLC*

**DEBEVOISE, Senior District Judge**

      This matter comes before the Court on two Motions, submitted by different groups of Defendants,[1] requesting confirmation of an arbitration award issued by the Financial Industry Regulatory Authority ("FINRA") and dismissal of the claims asserted against them by Plaintiff, Andrew Walzer. For the reasons set forth below, those Motions will be granted in part and denied in part.

## I. BACKGROUND

      Mr. Walzer opened a personal brokerage account with Defendant Muriel Siebert and Company, Inc. ("MSC"), a New Jersey brokerage firm, in 1980 and continued investing with that company for over 20 years. In 1982, Mr. Walzer signed an options agreement with MSC that gave him margin privileges. Beginning as early as 1996, he purchased securities on margin through his account with MSC. Mr. Walzer and MSC periodically renewed the options agreement throughout their relationship.

      In 2002, MSC notified Mr. Walzer that he must increase the percentage of equity held in his account. He refused, claiming that the equity in his account met the minimum requirements imposed by New York Stock Exchange ("NYSE") and Federal Reserve rules. In response, MSC produced a copy of what it claimed was Mr. Walzer's most recent options agreement, which was dated August 29, 1996, and allowed the company to raise his equity requirements above the minimums set by the NYSE and Federal Reserve. Mr. Walzer claimed that document was a forgery, and remained steadfast in his refusal to deposit additional funds. As a result, he faced

---

[1] The first group of Defendants (collectively, "MSC Defendants") is made up of Muriel Siebert & Company, Inc. ("MSC"); Muriel Siebert, the Chief Executive Officer of that company; Gerald Koske, one of its compliance officers; and Ronald Bono, a vice-president of MSC. The second consists of National Financial Services, LLC ("NFS"), the clearing broker that underwrote investments Mr. Walzer made through MSC.

numerous margin calls, which culminated in the forced sale at a loss of approximately $802,000 of the securities held in his account.

Claiming that MSC violated the terms of his options agreement by forcing those sales, Mr. Walzer commenced suit against that company in the Supreme Court of New York. In that action, he asserted claims against MSC for (1) breach of contract, (2) fraud, and (3) breach of fiduciary duty. While that litigation was still pending, Mr. Walzer filed a second action in this Court, in which he added various Defendants that had not been named in his state suit. In his Complaint, Mr. Walzer reiterated his state law claims, but also alleged that the Defendants violated the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a, et seq., and accompanying regulations.

MSC moved to compel arbitration of the New York action pursuant to the 1996 options agreement. In January 2005, the New York court granted that request, and stayed the state action pending arbitration before a FINRA panel. In doing so, it held that, even if the 1996 agreement was a forgery and thus invalid, the last undisputedly authentic iteration of the options agreement – from 1992 – included an arbitration clause which mandated arbitration of his claims before the FINRA panel. Mr. Walzer appealed that ruling, but failed to perfect his appeal. Therefore, the Supreme Court of New York's judgment that his state claims were subject to FINRA arbitration became final.

Following that ruling, the Defendants in this action moved to dismiss, claiming that the New York judgment compelling arbitration barred Mr. Walzer's claims under the doctrines of

res judicata and collateral estoppel.[2]  The Court granted that Motion on June 30, 2005.  Mr.
Walzer sought reconsideration of that ruling, and when that request was denied, timely appealed.

In a decision dated April 4, 2007, the Court of Appeals for the Third Circuit affirmed the
dismissal of Mr. Walzer's state law claims.  Walzer v. Muriel Siebert & Co., Inc., 221 Fed.
App'x 153, 156 (3d Cir. 2007) ("Walzer's state law claims are precluded by collateral estoppel
against all of the defendants because the issue of their arbitrability was clearly raised and decided
against him in state court.").  The Court of Appeals reversed, however, with respect to Mr.
Walzer's claims under the Exchange Act.  In doing so, it held that Mr. Walzer's federal claims
were not barred "because their arbitrability under the 1992 agreement was never actually
litigated in the New York proceeding.  The only issue actually litigated in Walzer's state case
was whether the 1992 agreement mandated arbitration of the fraud, breach of contract, and
breach of fiduciary duty claims that he had brought."  Id.

Even if the issue had been raised in the state proceeding, the Court of Appeals held that
the New York court could not have ruled on whether the 1992 agreement requires Mr. Walzer's
federal claims to be submitted to arbitration.  The Court of Appeals stated that:

> Under 15 U.S.C. § 78aa, jurisdiction to entertain suits under the Exchange Act
> rests solely in the federal courts.  Accordingly, Walzer could not have brought his
> Exchange Act claims in his previous action.  Thus, the New York courts would
> not accord [a judgment by the state court that those claims must be submitted to

---

[2] The parties appear to use the terms "collateral estoppel" and "res judicata" interchangeably.
The latter normally refers to issue preclusion – a doctrine which bars relitigation of an issue of
law or fact that has already been litigated and decided in cases where the interests of the party
bringing the claim were adequately represented in the earlier suit, even if he or she was not a
party to that action.  See United States v. Mendoza, 464 U.S. 154, 159 (1984).  "Res judicata,"
when used in its narrow sense, refers to claim preclusion – under which "a judgment on the
merits in a prior suit bars a second suit involving the same parties or their privies based on the
same cause of action."  In re Continental Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002).  As the
Court of Appeals "has previously noted[,] 'the preferred usage' of the term res judicata
'encompasses both claim and issue preclusion.'"  United States v. 5 Unlabeled Boxes, 572 F.3d
169, 173-74 (3d Cir. 2009) (quoting Venuto v. Witco Corp., 117 F.3d 754, 758 n.5 (3d Cir.
1997)).

> arbitration] preclusive effect, and neither should the District Court.  Because the New York judgment does not act as res judicata with regard to the Exchange Act claims, the issue becomes whether the arbitration of the federal claims is mandated by the 1992 agreement.

Id. at 157.

Elsewhere in its ruling, the Court of Appeals noted that neither Mr. Walzer nor MSC "produce[d] the 1992 arbitration clause in the New York case, and it is unclear what [that] agreement said." Id. at 156.  Therefore, it remanded to allow the parties to introduce the 1992 options agreement into evidence and give this Court the opportunity to determine whether that agreement requires that Mr. Walzer's claims under the Exchange Act be referred to a FINRA panel for arbitration.

Following remand, Defendants requested that this Court stay proceedings pending the outcome of the arbitration of Mr. Walzer's state law claims.  Noting that Mr. Walzer's federal claims in this action are premised on the same factual allegations and seek essentially the same relief as his state law claims, the Court granted that request on December 30, 2008.

On December 29, 2009, the FINRA panel issued a decision in which it dismissed Mr. Walzer's claims in their entirety.  In that ruling – which was made after a year of proceedings in which Mr. Walzer was granted multiple adjournments and was based on extensive written briefs from both sides, voluminous exhibits, and oral arguments made at two lengthy hearings – the FINRA panel held that Mr. Walzer's "submissions, documents, … and oral presentations failed to support his claim for damages.  Even if the claim were meritorious, had [Mr. Walzer] mitigated damages within a reasonable time [by repurchasing the securities sold by MSC] there would not have been any monetary loss."

## II. DISCUSSION

Defendants now move to confirm the FINRA arbitration award and dismiss Mr. Walzer's claims. With respect to his state law claims, they contend that, despite Mr. Walzer's assertions to the contrary in various filings since the arbitration award, the FINRA panel properly exercised its authority in dismissing those causes of action, and its judgment must therefore be confirmed pursuant to § 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.

Additionally, the Defendants contend that Mr. Walzer's federal claims under the Exchange Act must be dismissed. In doing so, they assert three arguments. First, they contend that, despite the fact that those claims were not at issue in the New York suit or the ensuing FINRA arbitration, certain findings of fact necessary to the FINRA panel's decision dismissing Mr. Walzer's state law claims preclude his federal causes of action. See (NSF's Br. Supp. Mot. Dismiss 26) ("The FINRA [a]ward precludes Plaintiff from pursuing a claim under Section 10(b) and Rule 10(b)(5) of the [Exchange] Act because the [a]ward is a final determination of necessary elements of that claim."); (MSC's Br. Supp. Mot. Dismiss 15) ("The FINRA [a]ward … rejects the same 'fraud' claim as asserted here in federalized garb, a claim based on precisely the same margin sales and underlying theories as presently before this Court."). Those arguments depend heavily on a legal contention made by both groups of Defendants: that unconfirmed arbitration awards such as the FINRA panel judgment are entitled to the same preclusive effect as other rulings under the doctrines of res judicata and collateral estoppel. See (NSF's Br. Supp. Mot. Dismiss 26-27) ("Generally, an arbitration award has the same preclusive effects under res judicata as a judgment of a court. This is true even if the award has not been confirmed by a court.") (internal citations omitted); (MSC's Br. Supp. Mot. Dismiss 15)

("Arbitral awards, of course, are entitled to full preclusive effect in subsequent federal lawsuits presenting the same issues.")

Even if Mr. Walzer's federal causes of action are not barred, Defendants' contend that they must be dismissed because the allegations in his Complaint are insufficient to state a cognizable claim for relief under the Exchange Act.  Finally, MSC argues that Mr. Walzer's federal claims were not asserted within two years of the discovery of the conduct on which those claims are premised, and are therefore barred by the applicable statute of limitations.

Mr. Walzer's arguments are not a model of clarity – a circumstance which, while unfortunate, is understandable in light of the complex nature of the legal questions at issue and the fact that he is not represented by counsel.  Moreover, those arguments are contained in multiple filings, some of which address questions wholly unrelated to the pending Motions. After careful review of his submissions, though, it appears to the Court that his arguments are three-fold, and can be broken down into those involving his claims under the Exchange Act and those relating to his state causes of action.

With respect to the latter, he contends this Court is without jurisdiction to confirm the FINRA arbitration because the FAA only allows for confirmation by the District Court in which the arbitration was held.  Additionally, Mr. Walzer claims that he "was denied a full and fair hearing" during the arbitration, and argues that the Defendants committed fraud on the arbitration panel.  (Pl.'s Letter of May 28, 2010 at 1.)  In a second set of submissions in opposition to the pending Motions, which he filed without leave on June 9 and 10, 2010, Mr. Walzer elaborated on those contentions, citing various portions of the transcript from the FINRA panel hearings that he claims suffer from errors or omissions.

In another filing in opposition to the pending Motions, which he submitted on May 26, 2010, Mr. Wazler addressed the Defendants' contention that his federal claims are precluded by the FINRA panel's ruling that he suffered no damages. In doing so, he argues that the Court of Appeals, in ruling that the New York court's decision compelling arbitration of his state law claims did not preclude his claims under the Exchange Act, has already rejected the Defendants' argument. In other words, Mr. Walzer contends that since his federal claims were not at issue in the arbitration, the FINRA panel's factual finding that he suffered no damages has no bearing on those claims. That assertion is, essentially, a contention that claim preclusion does not apply, whereas Defendants' arguments are based on issue preclusion – they claim that, even though Mr. Walzer's federal claims were not decided by the FINRA panel, the factual findings made by that panel on the issue of damages will make it impossible for him to prove those claims.

The pending Motions – and the parties' arguments relating thereto – address two separate issues: (1) whether the FINRA panel's dismissal of Mr. Walzer's state law claims should be confirmed, and (2) whether Mr. Walzer's federal claims under the Exchange Act should be dismissed. The Court will discuss those issues in turn.

**A. State Law Claims**

Defendants' requests for confirmation of the FINRA panel's ruling must be denied. As aforementioned, Mr. Walzer's state law claims have been dismissed and are no longer part of this action. Therefore, insofar as the pending Motions request confirmation of the FINRA panel's ruling rejecting those claims, they must be construed as a request for expedited consideration of an arbitral award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq.

The FAA allows the parties to apply for confirmation of an arbitration award to the United States District Court for the district in which that award was made.  9 U.S.C. § 9.  In doing so, the statute impliedly prohibits the exercise of jurisdiction over such requests by District Courts from other districts.  See Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 232 (3d Cir. 1998) ("The canon of expressio unius est exclusio alterius means that explicit mention of one thing in a statute implies a congressional intent to exclude similar things that were not specifically mentioned.").  Since all parties acknowledge that the FINRA panel's award was issued in the Southern District of New York, this Court is without power under the FAA to confirm that award.[3]

## B.  Federal Claims

As discussed above, the Defendants assert three arguments in support of their contention that Mr. Walzer's federal claims must be dismissed.  The first – that the FINRA panel's factual finding that Mr. Walzer suffered no damages bars his claims under the Exchange Act – is unavailing.  Reduced to its essence, that argument depends on the legal assertion that factual findings in an unconfirmed arbitration award give rise to the same sort of issue preclusion as other judgments.  See (NSF's Br. Supp. Mot. Dismiss 26-27) ("Generally, an arbitration award has the same preclusive effects under res judicata as a judgment of a court.  This is true even if the award has not been confirmed by a court.") (internal citations omitted); (MSC's Br. Supp.

_____

[3] As noted by the Court of Appeals in its April 4, 2007 Opinion, the Supreme Court of New York has already ruled that Mr. Walzer's state law claims were subject to the arbitration clause contained in the 1992 Agreement.  Mr. Walzer appealed that judgment, but failed to timely perfect his appeal.  Walzer, 221 Fed. App'x at 154.  Therefore, the Supreme Court of New York's ruling that the state law claims were subject to arbitration is final, and this Court must disregard Mr. Walzer's arguments relating to the propriety of that ruling.  Lance v. Dennis, 546 U.S. 459, 463 (2006) ("[L]ower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.").

Mot. Dismiss 15) ("Arbitral awards, of course, are entitled to full preclusive effect in subsequent federal lawsuits presenting the same issues.")  They do not.

The preclusive effect given to judgments of other tribunals by federal courts is governed by the Full Faith and Credit Statute, 28 U.S.C. § 1738, which states that:

> The records and judicial proceedings of any court of any … State … shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken.

"Section 1738 does not by its terms apply to the findings of an arbitrator, and the Supreme Court has held that section 1738 preclusive effect need not be given to an unreviewed arbitration award."[4] N.L.R.B. v. Yellow Freight Sys., Inc., 930 F.2d 316, 319 (3d Cir. 1991) (citing MacDonald v. City of West Branch, 466 U.S. 284, 288 (1984) ("[F]ederal courts are not required by statute to give res judicata or collateral estoppel effect to an unappealed arbitration award."). In doing so, the Supreme "Court reasoned that arbitration cannot provide an adequate substitute for a judicial proceeding to protect federal statutory and constitutional rights." Yellow Freight, 930 F.3d at 319.

Even in cases where Section 1738 does not apply, a arbitral decision may be entitled to preclusive effect under common law rules.  The Supreme Court has "frequently fashioned federal common-law rules of preclusion in the absence of a governing statute."  Univ. of Tenn. v. Elliot, 478 U.S. 788, 794 (1986).  However, no such rule applies in this case.  To the contrary, the Supreme Court has held that arbitral awards should not be given preclusive effect when (1) "Congress intended the statute[] at issue … to be judicially enforceable" and (2) "arbitration

---

[4] As discussed in Yellow Freight, "[w]hen a state court has affirmed an arbitration award, different considerations apply because then the issue is the preclusive effect to be given to a state court judgment."  930 F.3d at 319.  In light of the undisputed fact that the FINRA panel award in this case has not been reviewed by a state court, this Court need not take those considerations into account when deciding whether the arbitrators' factual findings should be given preclusive effect.

could not provide an adequate substitute for judicial proceedings in adjudicating claims under th[at] statute." <u>MacDonald</u>, 466 U.S. at 289.  Both factors apply here.

There is no question that Congress intended the Exchange Act to be judicially enforceable.  As discussed above, that Act creates private rights of action to combat the use of "manipulative and deceptive devices" in connection with the sale or purchase of securities.  15 U.S.C. § 78j(b).  Moreover, it vests exclusive jurisdiction over such suits in the federal courts. 15 U.S.C. § 78aa.

In <u>MacDonald</u>, the Supreme Court set forth several factors to be used in determining whether arbitration can provide an adequate substitute for judicial proceedings.  Of those, two compel the conclusion that the FINRA arbitration in this case was not sufficient to protect the rights at issue in Mr. Walzer's claims under the Exchange Act.  First, the Supreme Court has cautioned that arbitration does not form an adequate substitute when "an arbitrator may not have authority to enforce" its judgment under the applicable statute.  <u>Id.</u> at 290.  As noted by the Court of Appeals in its previous ruling in this case, it is unclear whether the 1992 options agreement required Mr. Walzer to submit claims under the Exchange Act to arbitration.  <u>Walzer</u>, 221 Fed. App'x at 156 (noting that neither Mr. Walzer nor MSC "produce[d] the 1992 arbitration clause in the New York case, and it is unclear what [that] agreement said" with respect to the arbitration of federal claims).  Moreover, the New York court's judgment compelled arbitration of only Mr. Walzer's state claims.  <u>Id.</u> ("The only issue actually litigated in Walzer's state case was whether the 1992 agreement mandated arbitration of the fraud, breach of contract, and breach of fiduciary duty claims that he had brought.").  Thus, the FINRA panel did not focus while making its factual determinations on whether the wrongdoing of which Defendants were accused constituted a violation of the Exchange Act – a factual inquiry that may, given the complex

11

nature of that statute, differ from the one necessary to resolve Mr. Walzer's state law claims –

and it would have been without the power to enforce any judgment to that effect.

> As an additional concern, the Supreme Court in <u>MacDonald</u> noted that:

> [A]rbitral factfinding is generally not equivalent to judicial factfinding. … [T]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable.

466 U.S. at 291.

That consideration applies with equal force in this case. While the factfinding process

undertaken by the FINRA panel appears to have been extensive, it did not afford Mr. Walzer the

same opportunity to develop his claims as he would have had in federal litigation. Most

importantly, it is undisputed that the FINRA panel issued its decision without the benefit of

discovery. Moreover, even if the parties had engaged in discovery and compiled a record

equivalent to the one that would be created by federal litigation, the fact that Mr. Walzer's

Exchange Act claims were not at issue in the proceedings below would have precluded him from

effectively developing the factual record relating to those claims. Therefore, the Court rules that

the FINRA panel's factual finding that Mr. Walzer suffered no damages does not preclude his

claims under the Exchange Act.

> The MSC Defendants' contention that Mr. Walzer's Exchange Act claims are time-barred

is similarly unavailing. Under section 804 of the Public Company Accounting Reform and

Investor Protection Act of 2002, commonly known as the "Sarbanes-Oxley" Act, private actions

for alleged violations of the Exchange Act must be brought either five years after such violations

or two years after their discovery, whichever is earlier. 28 U.S.C. § 1658(b). Mr. Walzer filed

this suit on November 17, 2004. His claims under the Exchange Act are based in large part on

his contention that the Defendants conspired to impermissibly force the sale of securities in his account by creating a forged options agreement that required him to maintain a higher percentage of equity in that account that he had previously agreed to.  He alleges in his Complaint that he did not discover that forgery until "late November 2002," when the Defendants sent him a copy of that supposedly-forged agreement.  (Compl. at 7, ¶ 16(h).)  Put differently, Mr. Walzer contends that the Defendants were part of an ongoing course of fraudulent activity, and that he did not discover that activity until he was served with the forged agreement.  He does not specify the exact date on which he was given the allegedly-forged agreement, and Defendants have not demonstrated that date was prior to November 17, 2002 – in which case his claims would likely be time-barred.  Therefore, in keeping with its duty to draw all reasonable inferences in his favor when deciding the pending Motions to Dismiss, see Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), the Court will assume until it is proven otherwise that Mr. Walzer's claims are timely.

The Defendants are correct, however, in their assertion that Mr. Walzer's Complaint fails to state a cognizable claim for relief under the Exchange Act.  Mr. Walzer claims that the "Defendants committed fraud by making material misrepresentations and failing to disclose facts."  (Compl. at 11, ¶ A.)  Specifically, he states in his Complaint that:

> [T]he Defendants, severally and in concert, participated and conspired to participate in a continuous course of conduct in violation of Section 10(b) of the 1934 Securities and Exchange Act … and Rule 10b-5 promulgated thereunder by use of mails and other means of interstate commerce.  Defendants knowingly or recklessly, in connection with the sale of securities:  a.  employed and continued to employ manipulative devices, schemes and artifices to defraud Plaintiff;  b. made and continued to make untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and  c.  engaged and continued to engage in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff, in connection with the sale of securities, (including acting with impunity and scienter by refusing to supply a copy of the margin

> agreement they alleged and claimed to have acted on for months during the
> margin sell-out period, and then instead sending Plaintiff a clearly [f]orged
> agreement in an attempt to justify earlier unlawful taking control of plaintiff's
> account and securities).

(Compl. at 12, ¶ A) (citations omitted.)

Mr. Walzer asserts a second claim based on the Defendants failure to produce his options

agreement when he demanded they do so:

> Defendants are also responsible under the 1934 Securities Exchange Act Rules
> 17a-3, 17a-4 and 17Ad-7 to have retained and produced within a reasonable time-
> frame written records including agreements it alleged it had for Plaintiff's account
> proving account agreements and their opening terms, from which Defendants
> claimed special rights re. managing Plaintiff's margin account assets.

(Compl. at 12, ¶ A) (citations omitted.)

Finally, Mr. Walzer states that "Defendants are also responsible (per my understanding) under

Rule 8c-1 of the 1934 Securities Exchange Act to not hypothecate customers' securities, without

a written agreement or their permission."  (Compl. at 12, ¶ A.)[5]

The allegations set forth above are insufficient to state a cognizable claim for relief.  Mr.

Walzer's first claim – in which he asserts that the Defendants violated section 10(b) of the

Exchange Act and Rule 10b-5 of its accompanying regulations – is made up almost entirely of

legal conclusions couched as factual allegations.  The Court is not obligated to accept the truth of

such statements.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 ("Threadbare recitals of the

---

[5] Mr. Walzer also asserted that "Defendants are responsible under Rule 10b-16 … to have given
a risks and terms type disclosure statement to margin customers upon opening their margin
account….  No such 10b-16 disclosure statement was given to Plaintiff upon opening of his
margin account in the early 1980s."  (Compl. at 13, ¶ A.)  As discussed above, the Sarbanes-
Oxley Act imposed a statute of limitations on private Exchange Act claims of either five years
after the alleged violation or two years after its discovery.  28 U.S.C. § 1658(b).  That deadline is
applicable to all actions brought after July 31, 2002, the date on which Sarbanes-Oxley became
effective.  Lieberman v. Cambridge Partners, LLC, 432 F.3d 482, 487 (3d Cir. 2005).  Therefore,
Mr. Walzer's claim that the Defendants violated the Exchange Act by not serving various
disclosures at the time he opened his account "in the early 1980s," (Compl. at 13, ¶ A) is time-
barred, and will be dismissed with prejudice.

elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cognizable claim.)

More importantly, Mr. Walzer's Complaint fails to allege an essential element of his section 10(b) and Rule 10b-5 cause of action.  In order to state a cognizable claim under those provisions, a plaintiff must allege six factors:

(1) a material misrepresentation or omission;

(2) scienter, i.e., a wrongful state of mind;

(3) a connection with the purchase or sale of a security;

(4) reliance;

(5) economic loss; and

(6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss.

McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007) citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

"Under Rule 10b-5 causation is two-pronged."  Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001).  "A plaintiff must show both:  (1) 'transaction causation' (or 'reliance'), i.e., that but for the fraudulent misrepresentation or omission, the investor would not have purchased or sold the security; and (2) 'loss causation,' i.e., that the fraudulent misrepresentation or omission actually caused the economic loss suffered.  McCabe, 494 F.3d at 425.

Mr. Walzer has not pled reliance.  To the contrary, his allegations demonstrate conclusively that the misrepresentation of which he complains was not the cause of his injury.  In the only portion of his section 10(b)/Rule 10b-5 cause of action that did not consist of legal conclusions couched as factual allegations, Mr. Walzer stated that the Defendants:

> [A]ct[ed] with impunity and scienter by refusing to supply a copy of the margin agreement they alleged and claimed to have acted on for months during the margin sell-out period, and then instead sen[t] Plaintiff a clearly [f]orged agreement in an attempt to justify earlier unlawful taking control of plaintiff's account and securities.

(Compl. at 12, ¶ A.)

In other words, the misrepresentation on which Mr. Walzer bases his section 10(b)/Rule 10b-5 claim – the fact that he was provided with an options agreement which he claims was forged – did not occur until <u>after</u> the sale of his securities. Thus, that sale could not have been undertaken in reliance on the misrepresentation.

Moreover, Mr. Walzer explicitly states in his Complaint that he was not deceived by, and did not rely upon, the Defendants' allegedly-false statements. He contends that he objected almost immediately to MSC's request that he increase the percentage of equity held in his account by making "numerous phone calls" to both MSC and NSF and writing letters protesting the change (Compl. at 6-7 ¶¶ 16(e), (f)), and filing a written complaint with the National Association of Securities Dealers in September 2002. (Compl. at 7, ¶ 16(g).) Those objections were made either prior to or during the period in which MSC forced the sale of some of Mr. Walzer's securities, which were carried out over his objections and without his consent. Thus, he cannot claim that he sold the securities at issue in reliance on the Defendants' alleged misrepresentations. At best, his allegations set forth a claim that the Defendants breached his options agreement by forcing those sales. As stated by the Court of Appeals, this Court may not entertain such claims in light of the fact that the New York court already compelled arbitration of Mr. Walzer's state breach of contract action. <u>Walzer</u>, 221 Fed. App'x at 156 ("Walzer's state claims are precluded by collateral estoppel against all of the defendants because the issue of their

arbitrability was clearly raised and decided against him in state court.").  Therefore, Mr.

Walzer's section 10(b) and Rule 10b-5 claim will be dismissed.

      Similarly, Mr. Walzer's claims under Rules 17a-3, 17a-4 and 17Ad-7 must be dismissed.

Those Rules derive from section 17(a) of the Exchange Act, 15 U.S.C. § 17q(a)(1), which

imposes record-keeping requirements on brokers that trade on national securities exchanges.

The imposition of those requirements does not, however, give rise to a private right of action

whereby a litigant may seek to enforce them through a suit for damages.  Touche Ross & Co. v.

Redington, 442 U.S. 560, 569 (1979) ("[W]here, as here, the plain language of the provision

weighs against implication of a private remedy, the fact that there is no suggestion whatsoever in

the legislative history that § 17(a) may give rise to suits for damages reinforces our decision not

to find such a right of action implicit within the section.").  Therefore, Mr. Walzer is without

standing to assert claims under section 17 of the Exchange Act and its attendant regulations, and

the portions of his Complaint in which he seeks to do so must be dismissed.

      Finally, Mr. Walzer's claims under Rule 8c-1 must be dismissed.  That Rule, which is

derived from section 8 of the Exchange Act, 15 U.S.C. § 78h(c), prohibits brokers from

"hypothecate[ing] or arrang[ing] for or permit[ting] the continued hypothecation of any

securities carried for the account of any customer under" certain circumstances.  17 C.F.R. §

240.8c-1.  In arguing that Defendants violated Rule 8c-1, Mr. Walzer apparently misunderstands

the meaning of the word "hypothecate."  That term means "[t]o pledge property as security or

collateral for a debt, without delivery of title or possession."  Black's Law Dictionary 811 (9th

ed. 2009).  Mr. Walzer does not allege that the Defendants used the securities in his account as

collateral for a debt; he simply claims that they sold them.  Therefore, those securities were not

"hypotheticated," and Mr. Walzer's invocation of Rule 8c-1 is inapposite.

"Ordinarily where a complaint is dismissed on … 'failure to plead with particularity' grounds alone, leave to amend is granted." In re Burlington Coat Factory Litig., 114 F.3d 1410, 1435 (3d Cir. 1997).  A claim may be dismissed with prejudice, however, if amending the complaint would be futile. Id. at 1434.  Mr. Walzer's Exchange Act claims present such a situation.  His own allegations throughout this suit – which demonstrate that he did not rely on the Defendants' alleged misrepresentations – will make it impossible for him to assert a cognizable claim under section 10(b)/Rule 10b-5.  He is without standing to assert claims under section 17(a) and its attendant regulations.  His Rule 8c-1 claim rests on a fundamental misunderstanding of that regulation, and the undisputed fact that his securities were sold rather than used as collateral for a debt discloses any possibility that he might be able to cure the defects in that claim.  Therefore, Mr. Walzer's federal claims under the Exchange Act will be dismissed in their entirety, with prejudice.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motions to Confirm the FINRA Arbitration Award are denied.  Defendants' Motions to Dismiss Mr. Walzer's federal claims under the Exchange Act are granted, and those claims are dismissed with prejudice.

The Court will enter an Order implementing this Opinion.


  s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:  August 10, 2010